Robinson, J.,
dissenting. I regret the necessity of filing a dissenting opinion in any case, but I find myself so wholly out of accord with the doctrine pronounced in the majority opinion, and with the exercise by this court of a power not possessed by it, that I feel constrained to state my position.
I agree with the majority that in all other respects than the matter of a recommendation of mercy it is the function of the jury to try facts, and that the jury must have a reason for every conclusion they reach, and that that reason must be supported by a proven fact or reasonable inference to be drawn from such fact, or by a presumption which the law draws from some proven fact, and that in our system of jurisprudence each such conclusion is reviewable and if upon such review it is found not to be supported by facts, inferences or presump *425 tions, such conclusion and verdict are set aside and held for naught.
It would have been entirely within the power of the legislature in the enactment of the mercy clause to Section 12400, General Code, to have provided that the jury after having found the accused guilty of murder in the first degree might, “if the circumstances of the case justified it,” recommend mercy, in which event the jury would be required to find the existence or non-existence of the necessary facts in support of their conclusion, and have a reason for their conclusion to recommend mercy, and such reason woúld be based upon the facts and circumstances of the case as disclosed by the evidence; and such recommendation would be reviewable, and if found not to be supported, could and would be set aside by a reviewing court. But the legislature in the exercise of its power did not see fit to name as a prerequisite to the right of the jury to recommend mercy that the jury should find any facts or conditions to exist before making such recommendation. In other words, the jury are not required to find or have a reason for their conclusion to recommend mercy, but by the provision of the act itself there is extended to the jury the privilege and the power, absolute and unconditional, of relieving the accused of the payment of the extreme penalty, a power analogous to the commuting power of the governor.
The legislature having seen fit to impose no restriction upon the power thus vested in the jury, the imposing of such restriction by the court is a clear invasion of the realm of the legislature and *426 a clear assumption of power by the court not conferred upon it by the constitution.
It was not the purpose of the legislature in defining murder in the first degree, and providing for a recommendation of mercy, to thereby make sub-degrees of that crime. Had it been so, it would have defined the elements necessary to constitute the different subdegrees. But it contented itself with defining that “Whoever, purposely, and * * * of deliberate and premeditated malice, * * * kills another is guilty of murder in the first degree and shall be punished by death,” and, then, without qualification, added the words “unless the jury trying the accused recommend mercy, in which case the punishment shall be imprisonment in the penitentiary during life.” Had the legislature intended to confine the power to recommend mercy to any particular kind or variety of murder in the first degree, of to any particular kind or variety of persons convicted of that degree of crime, it could and would have named the kind, variety, circumstances and conditions under which it was to be exercised.
It cannot be gainsaid that this power may be exercised by the jury not alone in cases where the murder is attended with extenuating and mitigating circumstances, but also in case of the most heinous murder, and that no court has the power to review or set aside such recommendation.
With the wisdom of vesting this wide, absolute and uncontrollable discretion in the jury we have no concern. It might, however, throw some light upon the purpose which actuated the legislature in the enactment of this provision to recall that at the time *427 it became a part of the statutory law of Ohio there was some sentiment and an extensive and widespread agitation for the abolition of the capital penalty, and this provision was a result, in part at least, of such agitation, and obviously was a compromise between the contending views.
The decisions of the courts of last resort in other states are not in accord, but it is asserted by the majority opinion that the greater weight of authority supports that opinion. I am unable to so conclude. The judge delivering the opinion relies largely upon the cases of Winston v. United States, Strather v. United States, and Smith v. United States, 172 U. S., 303. The opinion in those cases, reported as one, which declares the law in so far as- it has been declared by the supreme court of the United States, in my opinion does not warrant the conclusion arrived at by the majority, and for that reason, and for the further reason that it ought to control in this court, I quote extensively from the opinion.
In those cases the.court considered the decisions of the supreme courts of Utah, Louisiana, Georgia, Mississippi and California, touching the question of the recommendation of the jury where the penalty was decreased by such recommendation, and in summing up its conclusion as to those decisions used the following language, at page 312:
“The difficulty of laying down exact and satisfactory definitions of degrees in the crime of murder, applicable to all possible circumstances, has led other legislatures to prefer the more- simple and flexible rule of conferring upon the jury, in every *428 case of murder, the right of deciding whether it shall be punished by death or by imprisonment. This method has been followed by Congress in the act of 1897.
“The act of Congress confers this right upon the jury in broad and unlimited terms, by enacting that ‘in all cases in which the accused is found guilty of the crime of murder/ ‘the jury may qualify their verdict by adding thereto “without capital punishment,” ’ and that ‘whenever the jury shall return a verdict qualified as aforesaid’ the sentence shall be to imprisonment at hard labor for life.
“The right to qualify a verdict of guilty, by adding the words ‘without capital punishment,’ is thus conferred upon the jury in all cases of murder. The act does not itself prescribe, nor authorize the court to prescribe, any rule defining or circumscribing the exercise of this right; but commits the whole matter of its exercise to the judgment and the consciences of the jury. The authority of the jury to decide that the accused shall not be punished capitally is not limited to cases in which the court, or the jury, is of opinion that there are palliating or mitigating circumstances. But it extends to every case in which, upon a view of the whole evidence, the jury is of opinion that it would not be just or wise to impose capital punishment. How far considerations of age, sex, ignorance, illness or intoxication, of human passion or weakness, of sympathy or clemency, or the irrevocableness of an executed sentence of death, or an apprehension that explanatory facts may exist which have not been brought to light, or any other consideration what *429 ever, should be allowed weight in deciding the question whether the accused should or should not be capitally punished, is committed by the act of Congress to the sound discretion of the jury, and of the jury alone.”
It is true in the above the court uses the expression “upon a view of the whole evidence,” but when you contrast that expression with the expression, “The act does not itself prescribe, nor authorize the court to prescribe, any rule defining or circumscribing the exercise of this right; but commits the whole matter of its exercise to the judgment and the consciences of the jury” and with the expression, “How far considerations of age, sex, ignorance, illness or intoxication, of human passion or weakness, of sympathy or clemency, or the irrevocableness of an executed sentence of death, or an apprehension that explanatory facts may exist which have not been brought to light, or any other consideration whatever, should be allowed weight * * is committed by the act of Congress to the sound discretion of the jury, and of the jury alone,” it seems to me indisputable that the words “upon a view of the whole evidence” were used by that court inadvertently, or if not inadvertently at least inaccurately, for “sympathy or clemency,” or “the irrevocableness of an executed sentence of death,” or an “apprehension that explanatory facts may exist which have not been brought to light,” or “any other consideration whatever,” are facts and conditions which could not be established by proof, and therefore, would not and could not appear “upon a *430 view of the whole evidence.” A fair consideration of the final conclusion and judgment to which that court in those cases came, notwithstanding the inapt expression referred to, was that the jury may in such case at their discretion, with or without reason, recommend mercy, and since it was the intention of the legislature to vest in them such an absolute discretion, it is the duty of a trial court to so instruct.
It cannot be seriously contended that there is any distinction in the effect of the language of the Federal statute and the effect of the language of the Ohio statute.
Reading that case as a whole, relying upon the conclusion by that court reached, and not allowing the seven words “upon a view of the whole evidence,” which manifestly were used by the court inadvertently, to control and destroy everything else in the entire opinion, including the conclusion and judgment reached, for be it remembered that the judgment of conviction was reversed in all three cases, I am forced to the conclusion that that court, had it the power to review this case, would, upon the strength of that case, render a judgment of reversal.
Because sound reasoning does not support the judgment of the majority; and because the judgment of the majority sanctions the invasion by the court of the province of the legislature by adding to the absolute and unqualified power vested in the jury limitations and restrictions which the legislature did not prescribe, and which there is no ground for holding it intended to prescribe by im *431 plication; and because it authorizes the court to take away from the jury in part a power lawfully vested in them by the legislature, I dissent from the judgment, and the declaration of the law, as pronounced by the majority in this case.
Wanamaker, J., concurs in the dissenting opinion.